## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SRINIVAS GINJUPALLI, | |
| *Plaintiff,* | |
| vs. | Case No.1:25-cv-08633 |
| CHAMELEON FINANCE; LAKSHMI FINANCE CENTER; SUMMIT FUSION LLC; ELIZIR CO., LIMITED; LUXURY COLLECTION INC; and DOES 1–100, | |
| *Defendants.* | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### Preliminary Statement

1.      Plaintiff Srinivas Ginjupalli brings this civil action to recover approximately $3 million in funds and digital assets stolen through an organized investment-fraud scheme—commonly known as a "pig butchering"—operated under the names "Chameleon Finance" and "Lakshmi Finance Center."  In these schemes, the fraudsters gain the trust of the victim and then deceive the victim into investing in fake cryptocurrency assets on the promise of huge returns in a short period of time.  These fraudulent platforms are designed to look and function like a real trading platform.[1]  They often show artificial gains designed to keep victims engaged and to induce them to deposit more funds.

2.      In this case, Plaintiff was induced by Defendants into believing that he was depositing funds onto a legitimate cryptocurrency trading exchange.  The scheme used complex and sophisticated social engineering to induce Plaintiff to make deposits.  Defendants fabricated

---

[1] https://www.chameleonfinance.com/#/home (last accessed Oct. 16, 2025); https://www.lakshmifinance.org.in/ (last accessed Oct. 16, 2025).

realistic trading interfaces, "escrow" pretexts, and unlawful withdrawal restrictions to coerce further deposits and block withdrawals.  The perpetrators directed Plaintiff's wire transfers into bank accounts belonging to Summit Fusion LLC and ELIZIR Co., Limited at various banks, including Deutsche Bank Trust Company Americas (located within the Southern District of New York).  Plaintiff seeks damages and equitable relief, including replevin, conversion, constructive trust, and injunctions securing traceable proceeds.

**Parties**

3.      Plaintiff is an individual who resides in Martinez, Columbia County, Georgia.

4.      Defendants Chameleon Finance and Lakshmi Finance Center are business entities whose true forms and locations are presently unknown and will be ascertained in discovery.

5.      Defendant ELIZIR Co., Limited is believed to be a foreign company banking at Deutsche Bank Trust Company Americas and International Bank of Chicago.

6.      Defendant Summit Fusion LLC is believed to be an LLC banking at Bank Irvine, Irvine, California.

7.      Defendant Luxury Collection Inc. is believed to be a corporation banking at TD Bank, N.A.

8.      Defendants Does 1–100 are as-yet unidentified persons or entities who participated in, received, or dissipated Plaintiff's property.

**Jurisdiction and Venue**

9.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiff is a citizen of Georgia; on information and belief, Defendants are citizens of other states or foreign entities.  The citizenship of Doe Defendants is disregarded for diversity purposes.

10.    Personal jurisdiction and venue lie in this District under 28 U.S.C. § 1391(b)(2) because this District is where a substantial part of property that is the subject of the action is situated.

**Factual Allegations**

11.    Beginning in April 2025, an individual messaged Plaintiff inviting him to join her group to obtain stock advice.  When Plaintiff joined, an individual using the name "Casey Ross" with an alluring profile picture associated with Defendant Lakshmi Finance Center ("LFC") contacted Plaintiff on WhatsApp.

12.    After gaining Plaintiff's trust, Defendants induced Plaintiff to open an account at "Chameleon Finance/Chameleon Exchange."[2]  Plaintiff underwent a real-seeming "know your customer" or KYC process and set up an account.  The website displayed his account information in a manner designed to give the appearance of a legitimate trading platform:

---

[2] https://www.chameleonfinance.com/#/home.



| ZBQF/USDT | 100X | 8/22/2025 18:13 | 0.00% | Buy to Open Long | 58810/58810 | 14.209/--- | 588100 | 5881 | --- | --- | Fully Completed |
| BJX/USDT | 100X | 8/22/2025 13:28 | 31.25% | Sell to Close Long | 52998/52998 | 353.04/--- | 529980 | 5299.8 | 165646.9853 | --- | Fully Completed |
| BJX/USDT | 100X | 8/22/2025 13:21 | 0.00% | Buy to Open Long | 52998/52998 | 351.94/--- | 529980 | 5299.8 | --- | --- | Fully Completed |
| BJX/USDT | 100X | 8/20/2025 14:50 | 24.64% | Sell to Close Long | 36565/36565 | 321.34/--- | 365650 | 3656.5 | 90114.95866 | --- | Fully Completed |
| BJX/USDT | 100X | 8/20/2025 14:43 | 0.00% | Buy to Open Long | 36565/36565 | 320.55/--- | 365650 | 3656.5 | --- | --- | Fully Completed |
| HBRT/USDT | 20X | 8/19/2025 20:13 | -0.64% | Sell to Close Long | 1585/1585 | 49.662/--- | 79250 | 158.5 | -510.48754 | --- | Fully Completed |
| HBRT/USDT | 20X | 8/19/2025 20:12 | 0.00% | Buy to Open Long | 1585/1585 | 49.678/--- | 79250 | 158.5 | --- | --- | Fully Completed |
| MKS/USDT | 100X | 8/17/2025 17:46 | 214.16% | Sell to Close Long | 24224/24224 | 27.089/--- | 242240 | 2422.4 | 518805.1733 | --- | Fully Completed |
| MKS/USDT | 100X | 8/17/2025 17:04 | 0.00% | Buy to Open Long | 24224/24224 | 26.521/--- | 242240 | 2422.4 | --- | --- | Fully Completed |
| JXQF/USDT | 100X | 8/15/2025 17:41 | 41.11% | Buy to Close Short | 20454/20454 | 60.55/--- | 204540 | 2045.4 | 84103.61842 | --- | Fully Completed |
| JXQF/USDT | 100X | 8/15/2025 17:31 | 0.00% | Sell to Open Short | 20454/20454 | 60.8/--- | 204540 | 2045.4 | --- | --- | Fully Completed |
| JXQF/USDT | 20X | 8/15/2025 12:20 | -3.67% | Sell to Close Long | 984/984 | 59.7/--- | 49200 | 98.4 | -1809.73081 | --- | Fully Completed |



13.     To build trust, the perpetrators allowed Plaintiff to make small withdrawals (under

$10,000).  The perpetrators used documents that appeared to be government records to persuade

Plaintiff that their investment platform was legitimate:

*See next page*



**Financial Crimes Enforcement Network
Department of the Treasury**

MSB Registration Status Information

Date: 02/22/2025

Information contained on this transcript has been provided to FinCEN by the money services business registrant. FinCEN does not recommend, approve, or endorse any business that registers as a money services business. Any such claim and similar claims are false and may be part of a scam or attempt to deceive consumers.

The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

Information contained on this site has been provided by the MSB registrant. FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN. If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form.

MSB Registration Number: 31000293091657
Registration Type: Initial Registration
Legal Name: Chameleon Finance INC.
DBA Name: Chameleon Finance

Street Address: 4301 Connecticut Ave NW
City: Washington, D.C.
State: DISTRICT OF COLUMBIA
Zip: 20008

MSB Activities:

Check casher (Including traveler's and money orders), Dealer in foreign exchange, Issuer of money orders, Issuer of traveler's checks, Money transmitter,

Seller of money orders, Seller of prepaid access, Seller of traveler's checks

States of MSB Activities:

Alabama, Alaska, American Samoa, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District Of Columbia,

Federated States Of Micronesia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas,

Kentucky, Louisiana, Maine, Marshall Islands, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands,

Ohio, Oklahoma, Oregon, Palau, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee,

Texas, Utah, Vermont, Virginia, Virgin Islands, US, Washington, West Virginia, Wisconsin, Wyoming

All States & Territories & Foreign Flag:  All States/Territories, Foreign

Number of Branches:  0
Authorized Signature Date: 02/19/2025
Received Date: 02/19/2025



Undersigned counsel's investigation indicates that these supposed government documents are shams.

14.    Initially, Plaintiff transferred approximately $5,000 at a time from his Robinhood account eventually totaling approximately $100,000.

15.    After the Chameleon website displayed substantial (and fictional) profits, eventually, the LFC perpetrators persuaded Plaintiff to deposit funds directly into his supposed Chameleon Finance account from Plaintiff's Bank, SoFi, N.A.  The deposits were accomplished through electronic funds transfers from Plaintiff's bank account with SoFi to recipient entities called Luxury Collection Inc.; Summit Fusion LLC; and Elizir Co., Limited, using a supposed third-party wire transfer service called "C2C services."

16.    Ultimately, Plaintiff made 14 wire transfers to Defendants totaling about $3.7 million.  Of the $3.7 million, most of the funds were wired to Deutsche Bank Trust Company

Americas is located at 60 Wall Street, New York, NY 10005.  Defendants incentivized Plaintiff to make additional transfers using sophisticated social-engineering techniques through which Plaintiff could achieve increasing VIP "status" with LFC:



| Membership level | Starting capital | Weekly trading frequency | Profit target | Commission charged after profit | Trading strategy |
|---|---|---|---|---|---|
| VIP1 Pioneer Member | 500K | 3 times | 70%+ | 10% | Basic Optimized Investment Strategy<br>1 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 20% profit<br>2 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 60% profit |
| VIP2 Elite Member | 3M | 4 times | 200%+ | 8% | Basic Optimized Investment Strategy<br>2 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 35% profit<br>2 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 60% profit |
| VIP3 Noble Member | 5M | 5 times | 500%+ | 6% | Basic Optimized Investment Strategy<br>2 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 45% profit<br>3 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 80% profit<br>Receive professional guidance from Professor Jonathan Dale Benton |

Overview:
At Lakshmi Finance Center (LFC), we offer a tiered VIP Membership Program designed to serve sophisticated and high-net-worth individuals seeking strategic access to digital asset investment opportunities, wealth management solutions, and institutional-grade insights powered by AI

17.    For example, more than 50 "VIP" members appeared to be members of the Whatsapp group to which Defendants invited Plaintiff.  These supposed "VIP" members described selling their homes and cars to invest more with Chameleon and LFC.  On information and belief, the phone numbers were spoofed by Defendants and the messages were generated either by bots or by the perpetrators, all to help build social proof and gain Plaintiff's trust.

18.    Plaintiff first became alerted to the fraudulent nature of the scheme when he attempted to withdraw funds.  Initially, Plaintiff was able to make small withdrawals of $10,000 or less. But when he attempted to make larger withdrawals to pay his son's tuition, suddenly the "account" became restricted.  In late September 2025, Chameleon insisted that Plaintiff make additional deposits to cover certain commissions and service fees and set an arbitrary deadline of October 15, 2025, for Plaintiff to make additional deposits.  Defendants' conduct raised red flags for Plaintiff.  After all, why would Chameleon require additional deposits when Plaintiff's account

showed a balance of millions of dollars?

19.    After Defendants' September conduct insisting on additional deposits aroused Plaintiff's suspicion, Plaintiff promptly and diligently sought out counsel.  Counsel's investigation raised additional red flags.  The Chameleon website did not publish the terms of service justifying the additional fees or the inability for Plaintiff to withdraw funds from his account.  Neither Chameleon nor LFC appears to have a physical location, phone number, or mailing address. Chameleon's only point of contact was an email address: Service@chameleonfinance.com.

20.    Nonetheless, Plaintiff through counsel sent a demand letter insisting Chameleon either release Plaintiff's funds or provide contractual or regulatory justification for limiting Plaintiff's ability to withdraw funds.  Counsel received an email response embedded with basic Chinese characters (for the date and time) that acknowledged Plaintiff's funds were being held "in escrow" but failing to identify contractual terms of service or other legal justification.  After another unproductive email exchange, counsel grew suspicious that the email responses were being generated by a bot or some other form of generative artificial intelligence.  Counsel sent an automated authenticity test, which the email account failed.  As its response to the verification question, "What's your favorite color?," the email received back was non-responsive and indicative of non-human activity.

21.    Plaintiff sprang into action, through counsel sending fraud-notice letters to the banks that sent and received wire transfers the very same day Chameleon's support email account failed the bot test.  These letters—sent by email and certified mail to the banks that received the fraudulent wire transfers—notified the banks that they were holding proceeds from bank fraud and wire fraud and demanded the  immediate reversal of  the wire transfers and freezing of the assets in the accounts.

22.     Plaintiff also submitted an IC3 form to the Federal Bureau of Investigations and is cooperating with law enforcement.

23.     Thanks to Plaintiff's prompt action, one wire transfer was successfully stopped. But to date, Plaintiff has not received further responses from the remaining banks or meaningful responses from Chameleon or LFC.

24.     Despite these efforts, neither Defendants nor the recipient banks have returned Plaintiff's funds.

### Causes of Action

### Count I — Fraud (Georgia Law)

25.     The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

26.     To induce Plaintiff to transfer funds and forgo withdrawals, Defendants knowingly made false representations of material fact, including, but not limited to (a) the legitimacy of Chameleon Finance as a trading platform; (b) the existence and enforceability of "escrow" and third-party approval limitations; (c) the need to inject external funds to "unlock" existing assets; and (d) the legitimacy of the $2 million "loan." Plaintiff reasonably relied on these representations and suffered damages exceeding $3.7 million. Plaintiff seeks compensatory and punitive damages under O.C.G.A. § 51-12-5.1.

### Count II — Fraudulent Inducement (Georgia Law)

27.     The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

28.     Defendants intentionally and knowingly misrepresented and concealed material facts to induce Plaintiff to transfer funds and maintain deposits, including pretextual "escrow/loan"

conditions and fabricated profitability. Plaintiff justifiably relied on these misrepresentations and was damaged as alleged.

### Count III — Replevin (Claim for Immediate Possession)

29.     The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

30.     This is an action for the immediate possession of specific, identifiable personal property—fiat funds and cryptocurrency traceable to Plaintiff's wires—held by or for Defendants, including at accounts identified above and in downstream accounts to be identified through discovery. Plaintiff owns and has the immediate right to possess these assets; Defendants unlawfully detain them.

### Count IV — Conversion (Georgia Law)

31.     The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

32.     Plaintiff owns and has the right to immediate possession of his funds and digital assets. Defendants wrongfully assumed dominion over the property in denial of Plaintiff's rights by diverting, blocking, and withholding those assets. Plaintiff seeks actual and punitive damages for conversion under Georgia law.

### Count V — Imposition of a Constructive Trust and Equitable Restitution

33.     The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

34.     Defendants obtained Plaintiff's property by fraud and wrongful conduct. Equity requires that all traceable funds and assets be held in constructive trust for Plaintiff's benefit and disgorged to Plaintiff, including any proceeds held at Bank Irvine, Deutsche Bank Trust Company

Americas, International Bank of Chicago, and any transferee institutions and wallets.

## Count VI — Possession of Stolen Property (Georgia Law)

35.    The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

36.    Defendants knowingly received, retained, or aided in the concealment of stolen property—Plaintiff's funds—contrary to Georgia law. Plaintiff pleads a civil claim under O.C.G.A. § 51-1-6 predicated on violation of duties imposed by Georgia's theft-by-receiving statute, including O.C.G.A. § 16-8-7, and seeks damages proximately caused by such violations.

## Prayer for Relief

37.    Plaintiff requests judgment against Defendants, jointly and severally, for: (1) compensatory damages in an amount to be proven at trial but not less than $3,700,000; (2) punitive damages; (3) replevin and immediate possession of specific funds and digital assets; (4) the equitable imposition of a constructive trust and disgorgement of all traceable property; (5) pre- and post-judgment interest; (6) attorneys' fees and costs as allowed by law; and (7) such further legal and equitable relief as the Court deems just and proper.

## Jury Trial Demand

38.    Plaintiff demands trial by jury on all issues so triable.

*Signature on next page*

Dated: October 17, 2025

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
**George M. Padis** (*Pro Hac Vice Forthcoming*)
Texas Bar No. 24088173
**Griffin S. Rubin**
Texas Bar No. 2412809 (*Pro Hac Vice Forthcoming*)
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com

***Counsel for Srinivas Ginjupalli***

## VERIFICATION

I am the Plaintiff in the foregoing Complaint and am over the age of 18. I have personal knowledge of the facts set forth in the Complaint and declare that the allegations contained therein are true and correct to the vest of my knowledge, information and belief.

Executed on October 17, 2025, at Martinez, Georgia.


_____
Srinivas Ginjupalli